AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

FILED
UNITED STATES DISTRICT COURT
LAS CRUCES, NEW MEXICO
OCT 30 2023
MITCHELL R. ELFERS
CLERK OF COURT

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH IMEI 352130214308917, IMEI 352130214215138 AND CELLULAR PHONE NUMBER (575) 635-9530, THAT IS STORED AT PREMISES CONTROLLED BY VERIZON

Case No. 23-2054 MR

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the __Northern__ District of __California or elsewhere__, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 US.C. §§ 242, 250 | Deprivation of Rights Under Color of Law |
| 18 U.S.C. §1512(b)(3) | Witness Tampering |
| 18 U.S.C. §1512(c)(1) | Obstruction of Justice |

The application is based on these facts:

See Attachment C.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Armida Maria Macmanus, FBI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by __telephone__
*(specify reliable electronic means)*.

Date: 30 Oct 2023

*Judge's signature*

City and state: Las Cruces, New Mexico     Damian L. Martínez, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number **(575) 635-9530** and/or IMEIs **352130214308917** and **352130214215138** ("the Account"), that are stored at premises controlled by Verizon ("the Provider"), headquartered at **180 Washington Valley Road, Bedminister, New Jersey**.

## ATTACHMENT B

### Particular Things to be Seized

**I.   Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period of **April 29, 2023 to September 21, 2023:**

a. The following information about the customers or subscribers of the Account:

   i. Names (including subscriber names, usernames, and screen names);

   ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Local and long-distance telephone connection records;

   iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v. Length of service (including start date) and types of service utilized;

   vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

   vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

  viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

 b. All records and other information (including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

  i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records)), email addresses, and IP addresses, data usage reports (such as IPDR Reports, time on tower reports); and

  ii. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received, including precision location, location history, IP data session reports (including MCC/MNC, LAC, CellID, CGI, eNodeB, and any other cellsite and sector identifiers).

  iii. any and all timing advance/precision location records for the communications (such as RTT, Truecall, and LOCDBOR).

  iv. the content of any communications (e.g. SMS/MMS content)

**Verizon** is hereby ordered to disclose the above information to the government within **14 days** of issuance of this warrant.

## II. Information to be Seized by the Government

All information described above in Section I that constitutes fruits, evidence, and instrumentalities of violations of 18 U.S.C. §§ 242, 250, Deprivation of Rights Under Color of Law and 18 U.S.C. § 1512(b)(3), Witness Tampering, and 18 U.S.C. § 1512(c)(1), Obstruction of Justice involving Michael Andrew Martinez for the period of April 29, 2023, to September 21, 2023.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI shall deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH IMEI **352130214308917**, IMEI **352130214215138** AND CELLULAR PHONE NUMBER **(575) 635-9530**, THAT IS STORED AT PREMISES CONTROLLED BY **VERIZON** | Case No. _____ |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Armida Maria Macmanus, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number **(575) 635-9530** and/or International Mobile Equipment Identifiers (IMEIs) **352130214308917** and/or **352130214215138** that is stored at premises controlled by **Verizon,** a wireless telephone service provider headquartered at **180 Washington Valley Road, Bedminister, New Jersey**. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require **Verizon** to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since November 2005. I am currently assigned as a Special Agent for the Albuquerque

Division at the Las Cruces Resident Agency in Las Cruces, New Mexico. I am classified, trained, and employed as a federal law enforcement officer with statutory arrest authority charged with conducting criminal investigations of alleged violations of federal criminal statutes, including violations of Title 18 of the United States Code. My experience as a Special Agent includes but is not limited to: conducting physical surveillance; interviewing witnesses; writing affidavits for and executing search warrants; working with undercover agents and informants; issuing administrative and federal grand jury subpoenas; and analyzing financial records, telephone records, and data derived from the use of pen registers and trap and traces; and assisting in wiretap investigations. I have conducted or participated in investigations of subjects alleged to have violated 18 U.S.C. § 242, Deprivation of Rights Under Color of Law, and 18 U.S.C. § 1512, Witness Tampering and Obstruction of Justice.

3. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that evidence of violations of 18 U.S.C. §§ 242, 250, Deprivation of Rights Under Color of Law and 18 U.S.C. § 1512(b)(3), Witness Tampering, and 18 U.S.C. § 1512(c)(1), Obstruction of Justice have been committed by Michael Andrew Martinez. There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, and/or fruits of these crimes further described in Attachment B.

## JURISDICTION

5. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), &

(c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

6. On or about September 15, 2023, the FBI received information that Michael Andrew Martinez ("Martinez"), while serving in his capacity as a deputy with the Doña Ana Sheriff's Office ("DASO"), had sexually assaulted an adult female in custody (hereinafter "Victim") on April 30, 2023, thereby depriving the Victim of her civil rights. The FBI also received information that in the hours or days following the sexual assault, Martinez attempted to destroy evidence of the sexual assault, thereby obstructing justice. It was determined that the criminal conduct occurred in Las Cruces, New Mexico, within the District of New Mexico. I am the case agent assigned to the ongoing federal investigation.

7. The initial investigation into Martinez's sexual misconduct first arose from Martinez himself calling a DASO sergeant (hereinafter "Witness 1") on May 2, 2023, claiming that he had just gone into his DASO patrol vehicle and noticed that the center console had been damaged and that his Global Positioning System ("GPS") device was laying on his dashboard. Martinez further claimed that his patrol vehicle's tactical radio and WatchGuard DVR system and WatchGuard monitor had been destroyed.[1] Based on my investigation, I know that the WatchGuard DVR system stores video footage from cameras inside the patrol car, including, as pertinent here, video footage from the dash-mounted camera and the rear seat camera. After

---

[1] I conducted an online search of the WatchGuard DVR system and learned that it is an integrated evidence-gathering and archiving system. This system, or it's comparable alternative, is used by the DASO to capture law enforcement events with cameras and recorders such as the Motorola Solutions 4RE® in-car video system (WatchGuard DVR system) with V300 body-worn camera.

receiving this call, Witness 1 responded to Martinez's residence in Doña Ana County to investigate.

8.      Upon arriving at Martinez's residence, Witness 1 spoke to Martinez who reiterated his claims about noticing the damage to the interior of his patrol vehicle and added that it also appeared that someone had opened and rummaged through his glove compartment. Witness 1 inspected the patrol vehicle and observed that the tactical radio, the WatchGuard DVR system, and the WatchGuard monitor were either damaged or destroyed. Martinez was ordered to return the vehicle to the DASO, so that the recovery of stored data within the WatchGuard DVR system could be attempted and reviewed for possible evidence of the alleged robbery.

9.      The next day, May 3, 2023, Witness 1 contacted a lieutenant with the DASO Professional Standards Division (hereinafter "Witness 2"), who performs investigations of employees, due to the suspicious circumstances surrounding the DASO issued property that was damaged in and missing from Martinez's patrol vehicle. Witness 1 told Witness 2 that his investigation revealed no forced entry into Martinez's patrol vehicle and that the only item missing from the vehicle was Martinez's WatchGuard body worn DVR camera. On May 11, 2023, the DASO pulled the WatchGuard DVR from Martinez's patrol unit, and, on June 22, 2023, sent it to WatchGuard (Motorola). On August 21, 2023, WatchGuard sent the DASO a thumb drive containing videos recovered from Martinez's damaged WatchGuard DVR.

10.     On August 30, 2023, Witness 2 reviewed the recovered videos, including one video which showed Martinez sexually assaulting Victim while she was in Martinez's custody, handcuffed and restrained with a seatbelt inside the prisoner compartment of Martinez's patrol unit. Witness 2 notified his chain of command, and on August 31, 2023, the DASO terminated

Martinez's employment. Approximately two weeks later, the FBI was notified, and my federal investigation ensued.

11. The investigation has thus far established that on April 30, 2023, while on duty as a DASO deputy, Martinez, wearing his full uniform and patrolling in a DASO marked patrol vehicle, responded to a car accident on Snow Road and Mesilla Dam Road in Doña Ana County, New Mexico. Martinez approached a car that had struck a tree. Two females stood near the car, one of which was the Victim, who was the registered owner of the vehicle. Further investigation revealed the Victim was the driver of the car during the accident.

12. After speaking with Victim, Martinez detained Victim for Driving Under the Influence of Intoxicating Liquor or Drugs (NM 66-8-102A) and Careless Driving (NM 66-8-114A). Martinez handcuffed Victim and placed her inside his patrol vehicle, a 2017 Chevrolet Tahoe, bearing New Mexico license plate G99453. Martinez read Victim the Implied Consent Advisory, and she agreed to produce a breath sample. Martinez then transported Victim to the DASO headquarters where he administered a breathalyzer test, which produced a first sample of 0.04 and a second sample that was insufficient. Victim remained inside a holding cell while Martinez completed requisite paperwork. Afterwards, Martinez placed Victim, who remained handcuffed, back inside his patrol vehicle.

13. Martinez next transported Victim to the Mountain View Medical Center in Las Cruces, New Mexico, to obtain a medical clearance. Once said medical clearance was obtained, Martinez put Victim, who was still handcuffed with her hands restrained behind her back, back into his patrol vehicle. Martinez then secured Victim's seatbelt, further restraining her, before sexually assaulting Victim. After sexually assaulting Victim, Martinez transported her to the Doña Ana County Detention Center and booked her into the facility.

14. As part of my investigation, I obtained and reviewed videos recovered from Martinez's patrol vehicle's WatchGuard DVR. The following is a summary of the video footage capturing Martinez's sexual assault of Victim. The video footage begins with a banner that reads, "Dep. Michael Martinez 04-30-2023 @0335 Hrs. Backseat.mp4." The video footage next captures Victim seated and seat-belted in the caged prisoner compartment of Martinez's patrol vehicle. Victim is wearing a light-colored hoodie and shorts and her hands are behind her back, apparently handcuffed. Martinez and Victim engage in casual conversation during the transport. After approximately 15 minutes of recorded video footage, Martinez stops his patrol vehicle (based on my investigation, I know Martinez stopped at the Mountain View Medical Center), opens the rear passenger side door, and releases Victim's seatbelt. Victim gets out of the vehicle and Martinez shuts the door. A little over two hours later, video footage captures Martinez's patrol vehicle's rear passenger side door reopen, and Victim gets back inside the caged prisoner compartment. Victim's hands are still behind her back, apparently handcuffed.

15. Video footage then captures Martinez ask Victim if she is ok and she appears to respond, "Yes, Sir," as Martinez places his right hand on Victim's upper right thigh. Martinez then places his left hand briefly on the inside of Victim's upper right thigh area. Seconds later, Martinez fastens Victim's seatbelt—further restraining her—and places his hand again on her upper right thigh between her legs for a moment. Martinez then moves Victim's thighs apart and places his hand on or near her vagina. Victim appears minimally responsive and stares at Martinez as Martinez proceeds to squeeze Victim's upper right thigh. Martinez continues his sexual assault of Victim, placing his right hand apparently up and inside Victim's shorts on, near, or penetrating Victim's vagina. Martinez then three times moves his hand in a continuous rubbing motion while it is inside Victim's shorts and on, near, or penetrating her vagina, before

pulling his hand back and squeezing her upper right thigh another time. Not finished sexually assaulting Victim, Martinez moves the seatbelt positioned across Victim's chest and squeezes her left breast (over her hoodie), before unzipping her hoodie, placing his right hand inside Victim's hoodie, and rubbing and squeezing Victim's left breast for several seconds. After groping Victim's breast, Martinez steps away from Victim and shuts the patrol vehicle door. Victim then appears to look up at the vehicle's backset camera several times.

16. Following my review of this video, I interviewed Victim who corroborated that on April 30, 2023, Martinez arrested her for driving while intoxicated and, after arresting and transporting her, sexually assaulted her while she was in his custody.[2] Victim also reported that following the sexual assault, Martinez, on at least two occasions, on May 2, 2023, and May 6, 2023, called her cellphone. Victim recorded these calls and saved the recordings. Victim provided me with the recordings, which I reviewed.

17. The following is a summary of the recorded call which Victim reported receiving on May 2, 2023: The caller, calling from a blocked number, identifies himself as "Michael." When Victim says, "Who is Michael?" the caller responds, "We met the other day." Victim again says that she does not know who is calling. The caller responds, "I went by your work, but you're not there." Victim asks how the caller knows where she works and he simply replies, "You work at the weed shop." Victim tells the caller that she is not good with names and is "concerned." The caller responds that he works for the "Sheriff's Department." Victim asks if the caller is calling just for fun, and he says that he is calling to see what she is doing and to tell her that the charges will be dismissed. Victim asks the caller if he is trying to hang out and he

---

[2] This is a brief summary of the information I learned from Victim related to why probable cause exists to search Martinez's Apple iPhone accounts. I have not included all the information I learned from Victim during this interview.

tells her to call him when she is alone. Victim says she can be alone later if he wants to hang out and they talk about timing. The caller then asks Victim step outside and asks her whether anyone can hear him. She tells him that no one can hear him, and he again tells her that the charges will be dismissed. The caller then asks Victim what she is thinking about, and she responds, "I'm thinking how you did that." The caller responds, "Oh, I'm just gonna dismiss that." Victim asks whether he can just do that, and he responds he can. Victim asks, "Oh, you're above the law?" The caller says he is not and changes the topic to asking Victim what she said she is wearing. The call ends with Martinez telling Victim, "Just don't tell anybody," and to just go to court, do what they say, and the charges will be dismissed in 30 days.

18. The following is a summary of the recorded call which Victim reported receiving on May 6, 2023: The caller, again calling from a blocked number, identifies himself as "Martinez." Victim asks the caller to repeat himself and the caller responds, "Martinez, who's this? Victim replies, "Who is this?" and the call ends.

19. Frightened that Martinez kept calling her from blocked numbers, Victim set her phone to not accept calls from private numbers. Victim has not spoken to or seen Martinez since May 6, 2023.

20. In addition to feeling unsafe due to the repeated calls from blocked numbers, Victim also felt harassed and unsafe due to the caller's statement that he went to her workplace. Victim reported that following the sexual assault and Martinez's calls, she stopped working at her place of employment, which she told me was Monster House on Solano Drive and stopped sleeping at her residence.

21. In addition to obtaining and reviewing the recovered footage of Martinez sexually assaulting Victim, during my investigation I also obtained and reviewed additional recovered

footage from Martinez's patrol vehicle's WatchGuard DVR System. The recovered footage was dated April 30, 2023, and at the times listed on the footage, Martinez was off duty. In the footage, loud crashing sounds can be heard, and Martinez can be observed walking back and forth several times from his residence to his patrol vehicle. The last video, recorded at 9:51 p.m. that evening, shows a black screen and audio. This could indicate the WatchGuard DVR System was in the process of being damaged while the final video was being recorded. Based on my investigation, I believe this video shows Martinez attempting to damage the WatchGuard DVR System in his patrol vehicle, to conceal his sexual assault of Victim earlier that day.

22.     In addition to reviewing this additional recovered footage, I interviewed a sergeant from the New Mexico State Police ("NMSP") (hereinafter "Witness 4"), who told me that in reviewing the recovered footage of Martinez sexually assaulting Victim, he observed Martinez wearing his DASO issued body worn DVR camera.[3] Witness 4 opined that Martinez may have purposely unplugged the camera lens attachment on his body worn camera during the sexual assault of Victim with the intent to prevent the body worn camera from properly functioning. I then spoke with another DASO officer (hereinafter "Witness 5") who explained that the DASO body worn DVR camera must be activated with a push of a button to function. He added that the body worn DVR camera has a lens attachment which, when connected and activated, allows for a recording to take place. Witness 5 reviewed the video of Martinez sexually assaulting Victim and stated that he believed Martinez's body worn camera was on during the assault because he observed a green light on the camera. Witness 5, however, pointed out that the red flashing light feature on the camera indicated that while the device was turned on, it was not recording because the camera lens attachment was detached. Witness 5 opined

---

[3] This is a different camera than the WatchGuard DVR system that was in Martinez's marked patrol vehicle.

that Martinez intentionally disconnected the lens attachment of his body worn camera so that the body worn camera would not function properly and thus would not record the sexual assault.

23. On September 19, 2023, United States Magistrate Judge Damian L. Martinez issued both a federal arrest warrant for Martinez and a federal search warrant for Martinez's cellular phone. (*See* Case Number 23-1817MR-search warrant; Case Number 23-1430MJ-arrest warrant).

24. Martinez was arrested by the FBI and other law enforcement without incident at the DASO headquarters. During Martinez's arrest, an Apple iPhone was located on his person and seized pursuant to the search warrant. In addition, during Martinez's arrest, I spoke with Martinez and asked him questions unrelated to the investigation. After hearing his voice, I confirmed that he was the caller of the phone calls placed to Victim from blocked numbers.

25. Pursuant to the terms of the issued federal search warrant for Martinez's cellular phone, after locating and seizing Martinez's Apple iPhone, I used the iPhone's facial recognition feature to open the iPhone so that the FBI could later perform a digital forensic extraction of the phone's contents.

26. Within days of seizure, the FBI CART (Computer Analysis Response Team) conducted a forensic extraction of Martinez's iPhone. CART Examiners determined the iPhone was assigned IMEI 352130214308917 and IMEI 352130214215138 and cellular phone number (575) 635-9530 (SUBJECT PHONE).

27. I reviewed Martinez' application for employment with the DASO and verified that Martinez listed his phone number as the SUBJECT PHONE.

28. FBI SA Sean Macmanus, who is assigned to the FBI's Cellular Analysis Survey Team (CAST), determined that Verizon was the service provider for the SUBJECT PHONE and

sent a preservation letter to Verizon on September 22, 2023, for the SUBJECT PHONE's account.

29.  On October 19, 2023, I reviewed portions of the forensic extraction of Martinez's Apple iPhone. During my review, I observed that the SUBJECT PHONE was listed as the phone number assigned to the iPhone. I saw that on May 1, 2023, one day after Martinez detained and sexually assaulted Victim, the user of the Apple iPhone conducted a web search for "Monster House Dispensary." I recognized "Monster House" as the place where Victim told me she worked before the sexual assault. I also recalled hearing on the recorded call, which Victim reported receiving on May 2, 2023, the caller telling Victim that he went to her work but that she was not there and that he knew she worked at the weed shop. I conducted a web search of Monster House Dispensary and verified that Monster House Dispensary is located on Solano Drive in Las Cruces, New Mexico.

30.  During my review, I also found that on May 2, 2023, at 3:19 p.m., Martinez's extraction timeline listed a phone number that I know is assigned to Victim's cellular phone. This finding corroborated Victim's statement to me that Martinez contacted Victim via a blocked phone number on May 2, 2023.

31.  SA Sean Macmanus then served a federal grand jury subpoena to Verizon for tolls records associated with the SUBJECT PHONE. After receiving and reviewing the results, SA Sean Macmanus saw that the toll records corroborated Victim's account. SA Sean Macmanus also saw that IMEI 352130214308917 was assigned to the iPhone listed on the Verizon account. Furthermore, SA Sean Macmanus observed that on May 2, 2023, the phone number associated with Martinez's Apple iPhone called Victim's phone twice, once at 3:42 p.m. and once at 3:44 p.m. On both calls, the user dialed *67 to hide their phone number. On May 6,

2023, the phone number associated with Martinez's Apple iPhone again called Victim's phone at 10:07 p.m. Again, the user dialed *67 to hide their phone number.

32. In addition, in reviewing the forensic extraction of Martinez's Apple iPhone, I also uncovered records revealing that the user of the iPhone conducted a web search on May 4, 2023, at 1:44 a.m. for https://law.justia.com/codes/new-mexico/2018/chapter-30/article-9/section-30-9-12. I conducted a web search of this website and found that it corresponds to the 2018 New Mexico Criminal Laws. Specifically, the site is for the New Mexico Sexual Offenses/ Criminal Sexual Conduct. This search was conducted approximately four days after Martinez's sexual assault of the Victim and approximately two days after Martinez falsely reported that his DASO issued body worn camera was missing and that an unknown person had damaged his DASO patrol vehicle's WatchGuard DVR system.

33. Based on my training, experience, and investigation to date, I believe Martinez, while on duty for the DASO, sexually assaulted Victim while she was in his custody, handcuffed and restrained with a seatbelt inside the prisoner compartment of Martinez's patrol unit, thereby depriving the Victim of her civil rights. I also believe that after sexually assaulting Victim, Martinez attempted to destroy evidence of the sexual assault by falsely reporting that someone had stolen his DASO issued body worn camera and destroyed his DASO patrol vehicle WatchGuard DVR system, when Martinez knew that he himself had tampered with his WatchGuard DVR system.

34. I further believe that Martinez used his Apple iPhone in furtherance of the crimes he committed to find and stalk Victim. As the forensic extraction of Martinez's Apple iPhone and Verizon toll records reveal, Martinez used his Apple iPhone to call Victim multiple times, on different days, from a blocked number; to search for Victim's work location; and to obtain

information about the New Mexico state laws governing sexual assaults, in an apparent attempt to edify himself on the potential criminal charges he could face for the crimes committed.

35. Based on my training and experience, I also believe that Verizon maintains the described evidence and other records that may have not been recovered during the forensic extraction of the Apple iPhone, which could be due to Martinez's efforts to delete them. This is particularly a concern as my investigation has already revealed that Martinez attempted to destroy other evidence of his sexual misconduct.

## VERIZON

36. In my training and experience, I have learned that **Verizon** is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

37. Based on my training and experience, I know that **Verizon** can collect cell-site data about the SUBJECT PHONE. I also know that wireless providers such as **Verizon** typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal

course of business in order to use this information for various business-related purposes. Therefore, a preservation request was sent for historical cell site data associated with the SUBJECT PHONE to **Verizon** on September 22, 2023.

38. Based on my training and experience, I know that wireless providers such as **Verizon** typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as **Verizon** typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT PHONE's user or users and may assist in the identification of co-conspirators and/or victims.

**[Continued on the next page…]**

## CONCLUSION

39. Based on the foregoing, I request that the Court issue the proposed search warrant.

40. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving it on **Verizon**. Because the warrant will be served on **Verizon**, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

Armida Maria Macmanus
Special Agent
Federal Bureau of Investigation

Sworn telephonically, signed remotely, and transmitted by email on
30 October , 2023

DAMIAN L. MARTINEZ
UNITED STATES MAGISTRATE JUDGE